UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OKEMAYA MAURICE LESTER,

    Plaintiff,                                 CIVIL ACTION NO. 08-13454

v.                                        DISTRICT JUDGE BERNARD A. FRIEDMAN
                                          MAGISTRATE JUDGE DONALD A. SCHEER

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

RECOMMENDATION: Plaintiff's Motion for Summary Judgment should be DENIED, and that of Defendant GRANTED, as substantial evidence exists on the record that claimant remains capable of performing a significant number of jobs in the economy.

\* \* \*

Plaintiff filed applications for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits on August 7, 2006, alleging that he had become disabled and unable to work on August 1, 2006[1], at age 31, due a bipolar mental disorder. Benefits were denied by the Social Security Administration. A requested de novo hearing was held on June 21, 2007, before Administrative Law Judge (ALJ) Joel Fina. The ALJ found that the claimant was not entitled to disability benefits because he retained the ability to perform a significant number of jobs existing in the economy. The Administrative Law Judge determined that the claimant could work at all exertional levels from sedentary to heavy, but could not perform complex assignments in high stress environments. He

---

[1] Plaintiff amended this onset date of disability to March 8, 2007 (TR 12, 24-25).

restricted Plaintiff to jobs that required little judgment and could be learned in a relatively short period. The ALJ also restricted Plaintiff from jobs involving more than minimal contact with supervisors, co-workers or the general public. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was 35 years old at the time of the administrative hearing[2] (TR 19, 27). He had earned the equivalent of a high school education, and had been employed during the relevant past grocery store bagger, dishwasher and fast food worker (TR 28, 36). As a grocery store employee, Plaintiff stood for most of the workday. He constantly had to handle, grip and manipulate large and small objects. He lifted up to 50 pounds on a regular basis (TR 55).

Claimant testified that he was unable to work due to mental depression and thoughts of suicide (TR 29, 36). Medications allegedly failed to provide much relief (TR 31). Plaintiff explained that he was unable to maintain attention for more than a minute, and he claimed that he was unable to follow written instructions (TR 29, 38). During a typical day, the claimant said that he helped his mother with some household chores, including washing dishes (TR 32). He often walked the streets looking for places that served free food to the homeless (TR 32-33). Plaintiff has never been hospitalized for psychiatric care. Treatment

---

[2]The Commissioner chose not to print the administrative record, which included the testimony of the claimant and the Vocational Expert at the hearing before the ALJ. The transcript from the hearing, as well as the medical exhibits considered by the
ALJ, were electronically filed and available for review online on the district court's website. (See Docket #4, Answer to Complaint).

**2**

records indicate that the claimant first sought treatment for depression in March 2007 (TR 166-171). He was placed on anti-depressant medications, but was unable to see a therapist due to insurance coverage issues (TR 177). Claimant stated that he had difficulty getting along with others, and that he preferred being alone (TR 178).

A Vocational Expert, Roxane Minkus, classified Plaintiff's past work as medium, unskilled activity (TR 57). If the claimant was physically capable of light work activity, the witness testified that there were numerous unskilled cleaning/housekeeping, surveillance monitoring, mail clerk and janitorial jobs that Plaintiff could perform (TR 59). These jobs did not necessitate working with the general public or maintaining close contact with supervisors or co-workers (TR 58). These low-stress jobs did not require performing complex tasks. They allowed periodic breaks, and did not impose high production demands (TR 58-60).

LAW JUDGE'S DETERMINATION

The Administrative Law Judge found that Plaintiff was impaired as a result of a bi-polar disorder, but that his impairment was not severe enough to meet the Listing of Impairments. The ALJ recognized that the claimant's mental impairment precluded him from performing complex tasks, and from frequent contact with the general public, supervisors and/or co-workers. Nonetheless, the ALJ found that Plaintiff retained the residual functional capacity to perform a reduced range of heavy, light and sedentary unskilled work, within those limitations, as identified by the Vocational Expert.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining

whether his findings are supported by substantial evidence and whether he employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

In the instant case, Plaintiff maintains that his mental disorder has prevented him from returning to work. The law is clear, however, that the mere existence of an impairment, even a severe one, will not entitle the claimant to disability benefits unless the impairment prevents him from returning to his previous work or any other substantial, gainful activity existing in the national economy, considering his age, education and work experience. 42 U.S.C. § 423(d)(2)(A), 20 C.F.R. § 416.1505 (2008).

DISCUSSION AND ANALYSIS

Substantial evidence existed on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for a restricted range of work at all exertional levels. The medical evidence, as a whole, failed to provide objective support for Plaintiff's allegations of severe and totally disabling functional limitations stemming from his bi-polar disorder.

The claimant does not challenge the ALJ's determination that he retained the physical capacity for work at all exertional levels activity during the relevant period. His sole contention is that the ALJ's hypothetical questions to the vocational expert failed to incorporate all of his mental limitations, particularly those noted by treating sources. (See pp. 6-10 of Plaintiff's memorandum in support of Summary Judgment).

The ALJ based his residual mental capacity findings primarily upon the opinion of two psychologists, Michael Gotlieb and Matthew Dickson, who evaluated claimant in June and August 2007, respectively, and completed documentation that addressed his mental impairment.  Plaintiff reportedly was able to care for his personal care and daily hygiene. Claimant was cooperative and fully oriented to time and place.  Mood and affect were appropriate, and stream of mental activity was spontaneous and organized. Plaintiff's speech was not impaired (TR 179).

Following the evaluation, Dr. Dickson stated his belief that the claimant had deliberately misrepresented his mental capacity.  Plaintiff told the psychologist that he had no knowledge of current events, famous people, the names of large cities or even the exact date of his own birth. The claimant was also unable to do basic arithmetic, and he reportedly provided poor answers to abstract thinking, similarities/difference and judgment

5

queries (TR 180). As a result, Dr. Dickson concluded that there had been a significant component of malingering by the claimant during the evaluation (TR 180). The psychologist diagnosed a bi-polar disorder, but he calculated Plaintiff's Global Assessment Function (GAF) score at 61, indicating only moderate difficulties in occupational performance (TR 180).

In separate residual functional capacity evaluations, Drs. Dickson and Gotlieb both indicated that Plaintiff had mild to moderate limitations with regard to understanding, remembering and carrying out instructions (TR 176, 181). Dr. Dickson also noted mild limitations with regard to responding appropriately to usual work situations, or changes in routine work settings. Plaintiff was found capable of interacting appropriately with supervisors, co-workers and the general public (TR 176, 181-182).

The ALJ included significant mental limitations in his residual functional capacity finding. The Law Judge recognized that the claimant was limited in understanding, remembering and carrying out complex, detailed instructions. Consequently, he limited Plaintiff to jobs that involved simple, routine work. Furthermore, the Law Judge found that the claimant could not engage in work involving fast paced production requirements, and that he should avoid work activity that involved more than occasional interaction with the general public and co-workers (TR 15).

The Law Judge's hypothetical questions to the Vocational Expert accurately described Plaintiff's moderate limitations caused by his bi-polar disorder. There is no merit to Plaintiff's argument that the ALJ should have included a limitation that he had marked limitations in carrying out complex instructions and making judgments on complex work-related decisions. Unskilled work, by definition, is limited to understanding, remembering

and carrying out only simple instructions and requiring little, if any, judgment. 20 C.F.R. 404.1568(a) (2008). Under these circumstances, the ALJ's hypothetical questions accurately portrayed Plaintiff's impairment. The Vocational Expert was aware of claimant's mental limitations before she identified the types of jobs that the Plaintiff could still perform[3] (TR 58-60).

Plaintiff relies heavily upon the fact that Dr. David Dickerson, another examining psychologist, opined on June 22, 2007, that the he was disabled (TR 175). It is well settled that opinions of treating physicians should be given greater weight than those of one-time examining doctors retained by the government. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). However, the opinion of a treating physician is entitled to deference only if his clinical findings are uncontradicted by substantial medical or other evidence, and if the opinion is based on detailed, clinical, diagnostic evidence. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). Since Dr. Dickerson offered little objective evidence to support his

---

[3]Moreover, any interpretation that would require vocational experts to evaluate the effect of medical conditions would be inconsistent with the purpose that vocational experts serve under social security regulations. Under those regulations, the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an "assessment of [his] residual functional capacity." 20 C.F.R. § 416.920(a)(4)(iv) (2008), The vocational expert testifies on the basis of a claimant's "residual functional capacity and ... age, education, and work experience" and assesses whether the claimant "can make an adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v) (2008). The vocational expert's testimony is directed solely to whether, given a claimant's age, experience, and education, along with the ALJ's assessment of what he "can and cannot do," there exist a significant number of employment opportunities for him in the regional and national economies. The vocational expert is not expected to evaluate the claimant's medical conditions in making this determination. Indeed, vocational experts are not required to have any medical training, so any evaluation of medical evidence they perform would be outside their area of expertise.

June 2007, statement of disability[4], his opinion need not have been given any special weight. Miller v. Secretary, 843 F.2d 221, 224 (6th Cir. 1988). Under these circumstances, the totality of the evidence must be considered. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

It is the rare case, the exception, in which every piece of evidence points incontrovertibly towards a decision to deny benefits. There was evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that his testimony was fully credible. However, special deference is owed to the credibility findings of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said and how it was said, and to consider how that testimony fit in with the rest of the medical evidence. Such observation is invaluable and should not be discarded lightly. Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978). See also Williamson v. Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

By establishing that he could not return to his past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that he had the vocational qualifications to perform alternative jobs in the economy, notwithstanding his various impairments. The Commissioner, however, met his burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to hypothetical questions that took into consideration claimant's educational and vocational background, along with

---

[4]Dr. Dickerson completed a medical source statement that had the effect of rendering claimant disabled (TR 175). The statement was completed by checking boxes, and was not accompanied by a narrative report. Indeed, it appears the doctor's opinion was primarily based on Plaintiff's subjective complaints, rather than the objective medical evidence.

**8**

his significant impairments, the Vocational Expert testified that there were numerous unskilled cleaning/housekeeping, mail clerk and janitorial jobs that Plaintiff could perform. These jobs did not necessitate working with the general public or maintaining close contact with supervisors or co-workers. These low-stress jobs did not require performing complex tasks. They allowed periodic breaks, and did not impose high production demands (TR 58-60). Given the objective clinical findings of the examining physicians of record, substantial evidence existed on the record that Plaintiff retained the residual functional capacity for a restricted range of work activity at all exertional levels.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/Donald A. Scheer
                                        DONALD A. SCHEER
                                        UNITED STATES MAGISTRATE JUDGE

DATED: February 23, 2009

_____

## CERTIFICATE OF SERVICE

     I hereby certify on February 23, 2009 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on February 23, 2009: **None.**

                                        s/Michael E. Lang
                                        Deputy Clerk to
                                        Magistrate Judge Donald A. Scheer
                                        (313) 234-5217